United States District Court
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8   UNITED STATES OF AMERICA,                    No. C-09-4029 EMC

9              Plaintiff,

10       v.                                       **ORDER GRANTING PLAINTIFF'S
                                                  MOTION FOR VOLUNTARY PARTIAL
11   GONZALES & GONZALES BONDS AND                REMAND**
     INSURANCE AGENCY, INC., *et al.*,
12
             Defendants.                          **(Docket No. 55)**
13   _____/

14

15

16                  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

17       The United States' motion for voluntary partial remand of 11 bonds came on for hearing

18   before the Court on August 12, 2011.  Docket No. 55.  Plaintiff United States of America, on behalf

19   of the Secretary of the Department of Homeland Security, brought this suit to collect a debt from

20   Gonzales & Gonzales Bonds and Insurance Agency, Inc. and American Surety Company, Inc. based

21   on Defendants' alleged violations of four immigration bonds which resulted in administrative bond

22   breach determinations.  Defendants have filed counterclaims to rescind and/or cancel 17 additional

23   and separate bond breach determinations and to be refunded the amount already paid, alleging the

24   Department of Homeland Security made incorrect breach determinations.  The United States seeks

25   voluntary partial remand for 11 of the 17 bonds, in order to rescind and refund the bond breach

26   determinations due to administrative errors.

27       After considering the parties' submissions and oral argument, the Court enters the following

28   order.

United States District Court

For the Northern District of California

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The United States, on behalf of the Department of Homeland Security ("DHS"), filed suit against G&G and American Surety Company, Inc. ("G&G/ASC" or "Defendants") to collect debt based on Defendants' alleged failure to substantially comply with obligations under four bonds. *See* Compl. ¶¶ 1- 4.  DHS is given discretionary authority over the management of both the detention and removal of illegal aliens.  Compl. ¶ 14.  Immigration and Customs Enforcement ("ICE") is the department within DHS charged with apprehending and detaining inadmissable and deportable aliens.  Compl. ¶ 15.  When an alien is detained by ICE, certain conditions allow the alien to be released during removal proceedings pursuant to a custody determination, which includes the posting of a cash or surety delivery bond.  Compl. ¶¶ 15-16.  ASC is a surety certified to issue bonds for the benefit of the United States and G&G is an agent of ASC.  Compl. ¶¶ 11-12.  The surety of the bond is the obligor, and when a surety posts a bond through an agent, the agent becomes a co-obligor; these two parties are jointly and severally liable for the agent's actions regarding the bond. Compl. ¶¶ 24-25.

If the obligor fails to ensure that the alien complies with his/her obligations to the United States, such as appearing upon written request by DHS for delivery bonds, or ensuring an alien departs the United States on or before a certain date for voluntary departure bonds, the ICE Field Office Director determines whether a "substantial violation" of the terms contained in the Bond has occurred; if so, the bond is declared breached.  Compl. ¶¶ 21, 29.  When the ICE Field Office Director makes this determination, the Director issues a Notice-Immigration Bond Breached form which is sent to the obligor and/or co-obligor, and the obligor is given 30 days to appeal the administrative declaration of breach to the Administrative Appeals Office.  Compl. ¶¶ 29, 31.  If no appeal is taken, the administrative decision is final.  Compl. ¶ 34.

The United States alleges that G&G/ASC failed to deliver aliens as they were obligated to do under 25 different bonds, and thus, substantially breached their obligations, causing the Field Office

United States District Court

For the Northern District of California

1  Director to declare the bonds breached.  *See* Compl. ¶¶ 1-4.[1]  The United States seeks to recover the

2  principal amount owed as well as interest, penalties, and handling charges for each of the bonds.

3  Compl.¶ 93.

4       Defendants G&G/ASC answered these allegations and filed 17 counterclaims against DHS

5  and Janet Napolitano in her capacity as Secretary of DHS.  Countercl. ¶¶ 1-2.  G&G/ASC

6  counterclaim that DHS itself breached the terms of 17 different immigration bonds and that DHS's

7  breach determinations with respect to G&G were consequently improper.  *See id.*  Defendants paid

8  the principal on the bonds that were declared breached.  *See id.* ¶ 16.  The breaches G&G/ASC

9  allege stem from requirements under the Amwest settlements, such as failing to send certain forms

10  and provide certain instructions to aliens.  *Id.* ¶ 1.[2]  Defendants seek, *inter alia*, refund of payments

11  made on the bonds and rescission of the bond breach determinations and/or cancelling the bonds.

12  *See* Docket No. 9 at 49.  The United States filed a motion for voluntary partial remand back to the

13  agency of 11 of those 17 bond breach determinations in order to rescind the breach determinations

14  based on "administrative errors."  *See* Docket No. 55.  These 11 bonds are for Benitez, Castellanos

15  Molina, Cristobal-Silba, Escobar-Larin, Gao, Gonzalez-Sanchez, Lin, Kim, Zheng, Mato Marcos-

16  Hernandez, and Edgar Alvarez.  *Id.*  In their reply, the United States also indicates that G&G/ASC

17  will receive a refund or a credit for the amount paid on the 11 bonds that the United States seeks to

18  remand and rescind.  *See* Docket No. 58 at 3.

19

20

---

21  [1]  These 25 bonds are part of three suits that have been consolidated before this Court.  The
   instant case, No. 09-4029, comprises 4 bonds; Case No. 10-2417 comprises 18 bonds; and Case No.
22  10-0182 comprises 3 bonds.  *See* Docket Nos. 33 (relating Case No. 10-0182), 46 (relating Case No.
   10-2417), 52 (consolidating the cases for all purposes).

23  [2]  The parties in this case have an extensive litigation history.  In 1993, Gonzales & Gonzales
   Bonds and Insurance Agency, Inc. ("G&G"), Farwest Insurance Company ("Farwest"), Amwest
24  Surety Insurance Co. ("Amwest"), and Immigration and Naturalization Services, predecessor in
   interest to the Department of Homeland Security ("DHS"), became involved in litigation over the
25  obligations each party had in regards to immigration bonds posted by Amwest, Farwest, and G&G.
   *See* Docket No. 48 (Memorandum & Order).  In 1995, these parties entered into a settlement
26  agreement known as "Amwest I" where DHS agreed to change several policies in regards to the
   execution of future immigration bonds.  *Id.*  In 1997, the parties entered into another settlement
27  agreement known as "Amwest II" which incorporated the terms of Amwest I, and also provided for
   guidance to DHS in implementation of the policies relating to immigration bond contracts between
28  the parties.  *Id.*

3

**United States District Court**
For the Northern District of California

1    On May 24, 2011, the Court's Order advised the parties that the Court was amenable to

2  partial remand but requested that the government provide specific information about the

3  "administrative errors" to assure the Court that the remand request was not made in bad faith.  *See*

4  Docket No. 61.  The Court explained:

5    The court is amenable to remand of the eleven bond breach
     determinations, particularly given the government's representation that
6    'G&G/ASC will receive a refund or credit for the amount paid on the
     11 bonds'. . . In order to demonstrate to the court, however, that
7    remand is proper, the government will need to do more than cite
     broadly to 'administrative errors' in the bond breach determinations.
8    Defendants have averred that the government may be seeking to avoid
     meaningful review of ongoing problems within DHS, and the court
9    accordingly needs greater assurances that the request for remand is in
     good faith. (citation omitted).  If the government's request ultimately
10   reflects 'substantial and legitimate' concerns on the part of DHS,
     remand is likely appropriate.

11

12  Docket No. 61.  The Court ordered the government to file a declaration "setting forth: (1) the

13  specific administrative errors that DHS has identified in its initial breach determinations, and (2) the

14  procedures DHS intends to put in place in order to avoid these errors in the future."  *Id.*

15    The United States filed the declaration of Walter Le Roy, Chief of the Bond Management

16  Unit ("BMU"), Enforcement and Removal Operations for ICE.  *See* Docket No. 62.  Mr. Le Roy

17  describes that for each of the bonds, breach was determined because the alien was not surrendered

18  on the specified date.  *See* Docket No. 62.  However, DHS cannot establish that they complied with

19  their own procedures for their obligations under the bonds, which is why rescission of the breach

20  determinations are appropriate.  *Id.*  Mr. Le Roy describes the 11 bonds and lists an error for each

21  bond that he found upon review of the Record of Proceeding ("ROP").  *Id.*  Mr. Le Roy describes

22  that nothing in the ROP confirms that certain procedures as required by either the Amwest

23  settlements or the bonds themselves were followed.  *Id.*  For example, in the Benitez bond, nothing

24  in the ROP confirms that DHS waited three days to send a Form I-166 to the alien after sending a

25  form I-340 to the obligor as required by the bond form.  *Id.*  Some of the errors identified by Mr. Le

26  Roy are the same errors which G&G/ASC identified as well.  For example, G&G/ASC allege that

27  for the Cristobal-Silba bond, DHS failed to send notice of breach within 180 days as was required by

28  the bond form.  Countercl. ¶ 48.  DHS agrees that nothing in the ROP for the Crtistobal-Silba bond

4

United States District Court

For the Northern District of California

1  confirms that a breach notice was sent within 180 days. *See* Docket No. 62 at 4. G&G/ASC also

2  allege that for many of the bonds, DHS failed to send a fully completed "Questionnaire &

3  Worksheet" with demand letters as is required by the Amwest settlements. *See* Countercl. ¶¶ 55, 62,

4  76. Mr. Le Roy's declaration describes that for many of the 11 bonds, nothing in the ROP confirms

5  that the new address was included in the "Questionnaire & Worksheet," which presumably would

6  mean they were not fully complete. *See* Docket No. 62.

7         Mr. Le Roy's declaration also describes that "ICE has required its employees who process

8  bond paperwork to attend several training sessions focused on bond policies and procedures. Last

9  year, ICE conducted three different nationwide training sessions in May, June, and August of 2010."

10  Docket No. 61. He states that ICE employees receive notifications when bond breach

11  determinations are reviewed and found to contain defects, and in that way receive feedback, and that

12  a full day of training for all ICE employees who process bond paperwork will be held in the summer

13  of 2011. *Id.*

14         In response to Mr. Le Roy's declaration, G&G/ASC submitted the declaration of Raul Atler,

15  President of G&G since 1984. *See* Docket No. 78. In his declaration, Mr. Atler explains that he

16  found 33 errors in his review of the 11 bonds – in contrast to the 11 errors that DHS admits. *Id.*

17                                    **III.    DISCUSSION**

18  A.    General Legal Standard

19         In *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001), the court explained

20  that an "agency may request a remand (without confessing error) in order to reconsider its previous

21  position . . . [in those instances] the reviewing court has discretion over whether to remand." *Id.* at

22  1029; *See Southwestern Bell Tel. Co. v. Fed. Communications Comm'n,* 10 F.3d 892, 896 (D.C. Cir.

23  1993) (noting that the court had granted the Commission's motion for remand for purposes of

24  reconsideration); *Anchor Line Ltd. v. Federal Maritime Com.*, 299 F.2d 124, 125 (D.C. Cir. 1962)

25  (noting that "when an agency seeks to reconsider its action, it should move the court to remand or to

26  hold the case in abeyance pending reconsideration by the agency"). It is within the Court's

27  discretion whether to grant a remand request, and the Court may deny it "if the agency's request is

28

1    frivolous or in bad faith." *SKF USA*, 244 F.3d at 1029.  If the agency's request for remand reflects

2    substantial and legitimate concerns, then remand will usually be appropriate. *Id.*

3    B.        The United States' Request for Voluntary Partial Remand

4            G&G/ASC argue that the United States' request to remand is an effort to avoid judicial

5    review.  *See* Docket No. 56.  G&G/ASC claim that DHS' approach is reactionary, as DHS seeks

6    remand to perform more thorough investigations only when faced with the possibility of judicial

7    review.  *Id.*  Defendants also claim that DHS failed to provide the specific information this Court

8    requested regarding the errors and future review procedures.  *Id.*  DHS counters that it is attempting

9    to provide G&G/ASC with the relief they requested, namely the rescission and refund of the bond

10   breach determinations.  *See* Docket No. 58.

11           The Court finds that the United States' request for voluntary partial remand is in good faith

12   and reflects substantial and legitimate concerns.  *See, e.g., Citizens Against the Pellissippi Parkway*

13   *Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (noting that it can be "an abuse of

14   discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs

15   challenging federal action"); *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177 (4th

16   Cir. W. Va. 2009) (explaining that an agency's change in interpretation justifies a remand back to

17   the agency).  In this case, DHS has not only identified that errors were made, but has also indicated

18   which specific errors were made, and is willing to rescind the breach determinations on remand,

19   giving G&G/ASC precisely the relief it had requested.  *Cf. Lutheran Church-Missouri Synod v.*

20   *FCC*, 141 F.3d 344, 348-49 (D.C. Cir. 1998) (finding bad faith where the agency sought remand

21   based on a new "policy statement"that was nonbinding, where the agency could not promise any

22   particular decision on remand, and where the Court determined that the agency was merely

23   employing "novel" tactics to avoid judicial review); *Corus Staal BV v. United States*, 387 F. Supp.

24   2d 1291, 1296 (Ct. Int'l Trade 2005) (denying a remand request because the requesting party could

25   not point to an error, or even the possibility of an error).  Furthermore, some of the errors the United

26   States identified were the same errors G&G/ASC had brought up in their counterclaims.  There is no

27   dispute whether errors were made; both parties agree that errors were made.  While G&G/ASC

28   argue that the errors cited by the United States are not exhaustive, the United States still admits that

**United States District Court**
For the Northern District of California

6

**United States District Court**

For the Northern District of California

1    administrative errors were made, and thus there is a sufficient basis for determining that the bond

2    breach determinations should be rescinded.  DHS' request to remand to rescind the breach

3    determinations is thus an indication of good faith.  *See Gleason Indus. Prods., Inc. v. United States*,

4    31 C.I.T. 396, 398 (Ct. Int'l Trade 2007) ("When, however, the agency requests remand to correct a

5    mistake or address some other substantial and legitimate concern, it is far more sensible for a court

6    to defer to the agency whose expertise, after all, consists of administering the statute.").

7         In arguing that DHS requests remand in bad faith, G&G/ASC rely heavily on *Former*

8    *Employees of BMC Software, Inc. v. U.S. Secretary of Labor*, 454 F.Supp.2d 1306 (Ct. Int'l Trade

9    2006).  However, *BMC Software* is not analogous to the instant case.  In that case, the court

10   expressed concern with the Department of Labor's frequent pattern of requesting remand in order to

11   "sweep much of the worst of its dirt under the rug." *Id.* at 1353-54; *see also id.* at 1334 ("In this

12   case, like so many others in recent years, the agency's investigation was a shockingly cursory

13   process.  In short . . . it exalts form over substance to characterize as an 'investigation' the Labor

14   Department's superficial review of the Workers' petition at the agency level.") (citations omitted).

15        Here, however, G&G/ASC does not cite to any evidence showing a pattern by DHS of

16   frequently seeking voluntary remand in order to perform more thorough investigation in immigration

17   bond breach determinations.  While Defendants do cite to the litigation history between the two

18   parties, specifically the Amwest agreements which suggests a problem with DHS' procedures, that

19   evidence does not reflect that DHS has a habit of routinely seeking voluntary partial remand in an

20   effort to evade judicial review.  Defendants merely point to a vague theory that in the future, DHS

21   will continue to "declare breaches of immigration bonds without adequate review."  Docket No. 56

22   at 4.  This is insufficient to indicate bad faith, especially where both parties agree that errors were

23   made with respect to the bonds at issue.  *See Shakeproof Assembly Components Div. of Ill. Tool*

24   *Works, Inc. v. United States*, 412 F. Supp. 2d 1330 (Ct. Int'l Trade 2005) (granting a voluntary

25   remand request, and finding that "[a]t best, [the party opposing remand] has demonstrated the mere

26   possibility that Commerce may have been improperly motivated to seek voluntary remand . . . [but]

27   [a]gainst this possibility, the Court must weigh the justification for voluntary remand advanced by

28   Commerce . . . [T]he Court finds this justification compelling").

1    In sum, the United States is offering G&G/ASC the relief it requested.  Based on the fact that

2  DHS has provided a list of specific errors for each bond, including many errors which G&G/ASC

3  agree were made, the Court finds that the United States' request for voluntary partial remand of the

4  11 bonds is made in good faith based on substantial and legitimate concerns.  Accordingly, the Court

5  **GRANTS** the United States' motion for voluntary partial remand.

6  ### IV.    ADJUDICATION PLAN

7    At the August 12, 2011 status conference, the Court indicated its concern that the litigation

8  could become unmanageable if the parties seek to add substantial quantities of new bonds to their

9  ongoing dispute.  The Court therefore orders the parties to meet and confer to develop a proposed

10  adjudication plan so that the Court can address in an orderly way the bellwether bonds and issues

11  raised by the parties' claims and counterclaims, and any defenses thereto.  The United States shall

12  also file its answer to G&G/ASC's counterclaims according to the deadline already in place.  Should

13  G&G/ASC desire to file an amended counterclaim to add any new bonds, they are directed to obtain

14  consent from the United States or leave of the Court.

15    The Court will hold a further status conference on September 23, 2011, at 10:30 a.m.  The

16  parties are directed to file a joint case management statement including their proposed adjudication

17  plan by September 16, 2011.

18    This order disposes of Docket No. 55.

19

20    IT IS SO ORDERED.

21

22  Dated:  August 16, 2011

23    _____
       EDWARD M. CHEN
24    United States District Judge

25

26

27

28

United States District Court
For the Northern District of California

8