UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GONZALES & GONZALES BONDS AND INSURANCE AGENCY, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-09-4029 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM**<br><br>**(Docket No. 100)** |

Pending before the Court is Plaintiff United States' motion to dismiss Defendant G&G's Amended Counterclaims. Docket No. 100. After considering the parties' submissions and oral argument, the Court hereby enters the following order.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to this Court's order of October 14, 2011, Docket No. 90, Defendants G&G and American Surety ("G&G") were given permission to file a First Amended Counterclaim ("FACC") to assert additional bonds in addition to the 6 bonds asserted in its original counterclaim which were not remanded back to agency. Docket No. 94. The FACC contains a total of 34 bonds. In the FACC, Defendants allege that the United States has breached the immigration bond contracts – and acted arbitrarily and capriciously in declaring them breached – by failing to comply with one of 14 requirements included in the contracts pursuant to the *Amwest* settlement agreements. *See* FACC ¶ 21. Specifically, paragraph 21 alleges:

The immigration bond contracts between G&G/ASC and DHS provide, *inter alia*, the following:

(1) DHS is required to send an I-340 to the Agent and the Surety when the I-352 indicates that both G&G's and ASC's address is to be utilized for notice purposes.

(2) DHS' delay in sending G&G/ASC an I-340 for removal more than ninety (90) days after a final order of removal of the bonded alien excuses the G&G/ASC's obligations under the immigration bond.

(3) DHS' failure to send G&G/ASC a fully completed Amwest Questionnaire including, but not limited to, its failure to attach to the Amwest Questionnaire an I-166 or G-56 form and/or a photograph with every demand (I-340) excuses G&G/ASC's obligations under the immigration bond.

(4) DHS' conduct in notifying the alien of his surrender date in advance of notification to G&G/ASC excuses G&G/ASC's obligations under the immigration bond.

(5) DHS' failure to notify G&G/ASC of an amended OSC/NTA containing additional charges of removal levied against the bonded alien excuses G&G/ASC's obligations under the immigration bond.

(6) G&G/ASC is excused from its obligation to produce a bonded alien for removal when the bonded alien was incarcerated (in-custody) on the date of the demand.

(7) DHS is required to provide G&G/ASC with the right to inspect the bonded alien's "A" File to determine the propriety of a purported breach of an immigration bond.

(8) DHS' failure to send G&G/ASC notice of breach of an immigration bond within 180 days of the breach excuses G&G/ASC's obligations under the immigration bond.

(9) When an Immigration Judge orders a bonded alien to post a voluntary departure bond, DHS is required to notify G&G/ASC so that G&G/ASC can mitigate its monetary exposure by posting the voluntary departure bond.

(10) The Board of Immigration Appeals' issuance of an order setting a new date for the bonded alien's voluntary departure excuses G&G/ASC's obligations under the voluntary departure bond.

(11) When an Immigration Judge grants a bonded alien voluntary departure, and the Immigration Judge

2

|   |      |                                                                                                                                                                                                                                                                                                                                                                              |
|---|------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   |      | neglects to order the bonded alien to post a voluntary departure bond, DHS is required to cancel the delivery bond.                                                                                                                                                                                                                                                          |
|   | (12) | When an Immigration Judge grants a bonded alien voluntary departure, and the DHS trial attorney neglects to provide the bonded alien with written instruction as to how to properly effectuate and document a voluntary departure, DHS is required to cancel the delivery bond.                                                                                              |
|   | (13) | When DHS requests an alien to appear for an interview/case review despite the fact that the alien is subject to a final order of removal, then DHS' demand (I-340) is for an improper purpose and DHS is required to cancel the delivery bond. In addition, if there is no final order of removal, then a DHS' demand (I-340) to surrender for deportation/removal is for an improper purpose and DHS is required to cancel the delivery bond. |
|   | (14) | When the bonded alien and/or G&G/ASC has provided proof of voluntary departure to the DHS prior to the DHS breaching a voluntary departure bond, then G&G/ASC has substantially performed the terms of the voluntary departure bond, and the DHS is required to cancel the bond. Alternatively, G&G/ASC is entitled to complete mitigation (elimination) of the bond payment by demonstrating compliance within the terms of the Amwest mitigation period, or any DHS policy extending the Amwest mitigation period. |

Defendants allege that Plaintiff has repeatedly breached these obligations. FACC ¶ 22. However, Defendants do not specify which of the above-fourteen acts of breach Plaintiff committed for each bond in question. Rather, they simply assert with respect to each bond that DHS has breached the bond "by failing to comply with at least one, and oftentimes many, of the legal and contractual requirements specified in paragraph 21, above." *Id.* ¶¶ 26, 33, 40, 47, 54, 61, 69. Defendants assert that they will be able to amend their counterclaim to assert more detailed facts once they receive the relevant A-Files for the bonds in question. *Id.* ¶ 71.

For 6 of the bonds in question, Defendants allege that they have paid the government under protest to satisfy these bonds, and that they seek repayment under the Little Tucker Act due to Plaintiff's breach of contract. *Id.* ¶¶ 23-24. For each of the 34 bonds, Defendants assert a cause of action under the Administrative Procedure Act ("APA"), 5 U.S.C. 701, *et seq.*, alleging that Plaintiff has breached one of the 14 requirements above and that it has acted "unlawfully, arbitrarily,

3

capriciously and in excess of its statutory jurisdiction, authority and limitations." *Id.* ¶¶ 67-70. Defendants seek injunctive relief in the form of "setting aside or rescinding DHS' bond breach determinations and/or canceling the disputed bond breaches." *Id.* at 21 ¶ 2. They also seek declaratory relief of non-liability based on (1) Plaintiff's unlawful conduct with respect to the bond breach determinations; and (2) Plaintiffs' alleged failure to review the A-Files of each bonded alien and/or failure to include such A-Files in the record of proceedings used to determine bond breaches. *Id.* ¶¶ 75-76.

Plaintiff has filed a motion to dismiss the FACC, which is now pending before the Court. Docket No. 100.

## II. DISCUSSION

### A. Failure to State a Claim

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

///

///

4

### 2. Sufficiency of Factual Allegations

The gravamen of Plaintiff's motion is that Defendants fail to state a claim for relief because they fail to connect any of the 34 bonds to any of the 14 asserted ways in which the government breached the bond contracts. Although Defendants claim their pleadings satisfy *Twombly* and *Iqbal*, merely providing a list of defenses and a list of bonds–without explaining what defenses apply to which bonds–does not provide the government with fair notice of Defendants' claims with respect to each bond. *See McHenry v. Renne*, 84 F.3d 1172, 1175-76 (9th Cir. 1996) (requiring amendment where plaintiffs provided a "Summary of Allegations Against Individual Defendants" but failed to "outline [] each legal claim based on specific allegations of fact" and failed to "link[] their factual allegations to actual legal claims" against each defendant).

Although the Court has acknowledged in the past that Defendants are entitled to view the A-Files for all bonds in dispute, and that upon viewing those files they may discover additional defenses to the breach determinations, *see* Docket No. 48, at 23; Docket No. 104, Defendants must still identify at least their preliminary list of defenses to each bond breach determination. As the government points out, Defendants had, in their prior counterclaim, asserted such specific facts with respect to the 6 bonds that have been carried over to the FACC. *See, e.g.*, Answer & Counterclaim, Docket No. 9, at 30 ¶ 41 (listing the ways in which the government breached the Chang bond). In the FACC, by contrast, Defendants have not only failed to include such detail with respect to the 28 new bonds they assert, but they have also *removed* such allegations from the 6 bonds that remain from the initial counterclaim. *See, e.g.*, FACC ¶ 26 (alleging that the government has breached the Chang bond "by failing to comply with at least one, and oftentimes many, of the legal and contractual requirements specified in paragraph 21, above"). Presumably, Defendants must have some Rule 11 basis for alleging that the government breached these bonds; given this and their ability to identify the bases for the alleged breaches in the original counterclaim, Defendants should assert those specific bases for each breach currently within their knowledge. This will have a salutary effect of facilitating Plaintiff's response and the selection of the bellwether bonds for cross-motions for summary judgment.

Accordingly, the Court **GRANTS** Plaintiff's motion to dismiss Defendant's FACC with leave to amend, so that Defendants can articulate their preliminary list of defenses for each bond asserted.

### 3. Count VII - APA

In addition to the factual sufficiency of the pleadings, Plaintiff argues that Defendants have failed to state a claim under the APA because they have failed to identify any statute or regulation the government has violated that would invoke the APA's sovereign immunity waiver. Mot. at 4. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "There is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.'" *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990)).

As the government indicates, Judge Patel already instructed Defendants to amend their counterclaim to include the relevant statutory hook for their APA claim, namely 8 C.F.R. § 103.6 (which concerns surety bonds). *See* Mot. at 4-5 ("I am going to allow you to amend the complaint . . . . The APA, I think, you know, hook it to some kind of regulation. And I think it's probably going to have to be 103.6.") (quoting Judge Patel at April 12, 2010 Tr. at 40-41); July 27, 2010 Order, Dkt. 48 at 21-22; *United States v. Gonzales & Gonzales, Bonds and Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1094 (N.D. Cal. 2010) ("The government acknowledges that defendants "can invoke the APA's sovereign immunity waiver and be afforded full relief under the APA . . . ." DOJ Reply at 19. It only claims that defendants have failed to identify the statute or regulation at issue. The provision at issue here, 8 U.S.C. section 103.6, is clear, and the counterclaim *could be easily amended accordingly*.") (emphasis added).

Accordingly, Plaintiff's motion to dismiss the APA claim is **GRANTED** with leave to amend, so that Defendants can cite specifically to a statutory basis.

///

///

6

B.      Subject Matter Jurisdiction - Count VIII - Declaratory Relief

The Government argues that Defendants' declaratory relief claims must be dismissed because they seek declaratory relief on a contract with the government, which the district court lacks authority to issue.  *See* Mot. at 12 (citing *United States v. King*, 395 U.S. 1, 4-5 (1969); *Richardson v. Morris*, 409 U.S. 464, 465-66 (1973)).

The general rule is that a district court lacks jurisdiction to issue declaratory relief as to a contract with the government; rather, the only contract-based relief a district court can provide is monetary relief under the Little Tucker Act.  *See  Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) ("The sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court under the Tucker Act, or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act.  The waiver of sovereign immunity in the Administrative Procedure Act does not run to actions seeking declaratory relief or specific performance in contract cases.") (internal citations omitted).  The court lacks such equitable powers in the context of a contract claim because the APA does not waive sovereign immunity for claims in which there is "[an]other adequate remedy in a court" or for claims in which "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. §§ 704, 702.  With respect to contract claims against the government, the Tucker Act provides such an "adequate remedy" and also "impliedly forbids" equitable relief in most cases. *See Richardson v. Morris*, 409 U.S. at 465-66 ("[T]he Court of Claims has no power to grant equitable relief, and the jurisdiction of the district courts under the [Tucker] Act was expressly made concurrent with the Court of Claims.") (internal citations and quotation marks omitted); *Price v. United States Gen. Serv. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990) ("The [Little Tucker] Act does not . . . authorize the district courts to grant declaratory or equitable relief against the United States.").  Thus, in order to maintain a claim for declaratory relief, Defendants must demonstrate that their claims arise under the APA and are not precluded by the Little Tucker Act.

Defendants' primary argument in response is that their declaratory relief claim is not one of contract, but rather arises as a challenge to the agency's arbitrary action under the APA.  *See* Opp. at 11.  Defendants are correct that Plaintiff reads the limitation on district court jurisdiction over claims

involving contracts too broadly.[1] That a claim involves a contract does not render it a contract claim for purposes of this inquiry. "The answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case involves contract issues, but on whether, despite the presence of a contract, plaintiffs' claims are founded *only* on a contract, or whether they stem from a statute or the Constitution." *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992) (emphasis added). As the D.C. Circuit has explained in addressing its prior decision in *Sharp* (to which the government cites):

> The lesson of *Sharp*, we think, is straightforward: under § 702 and the Tucker Act, litigants may bring common-law contract claims only as actions for money damages in the Claims Court, but they may bring statutory and constitutional claims for specific relief in federal district court. Crucially, *Sharp* tells us that litigants may bring statutory and constitutional claims in federal district court *even when the claims depend on the existence and terms of a contract with the government*. The *Sharp* Court said that APA § 702 waived sovereign immunity for Chief Judge Sharp's due process claim even though that claim rested necessarily on the premise that his contract with the government gave him a constitutionally protected property interest. In addition, and also crucial, *Sharp* tells us that a federal district court may accept jurisdiction over a statutory or constitutional claim for injunctive relief even where the relief sought is an order forcing the government to obey the terms of a contract-that is, specific performance. The *Sharp* Court ruled that § 702 waived sovereign immunity for Chief Judge Sharp's prayer for an injunction against his transfer, an order, in other words, compelling the Defense Department to abide by the terms of its agreement with Chief Judge Sharp.

*Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 610 (D.C. Cir. 1992) (emphasis added) (citing *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986)). In *Nebraska Public Power Dist. v. United States*, 590 F.3d 1357, 1375 (Fed. Cir. 2010), the Federal Circuit cited *Transohio* with approval and applied the same standard. The Federal Circuit's approval of *Transohio*'s reasoning is important because "[u]nder 28 U.S.C. § 1295(a)(2) (1994), [the Federal

---

[1] As a secondary argument, Defendants claim the government has already accepted the viability of their declaratory relief claim by acknowledging that it could be included with an APA claim. *See* Plaintiff's Mot. to Dismiss Counterclaim, Docket No. 16, at 16 (arguing that declaratory relief claim in earlier counterclaim should be dismissed only because Defendants' other claims should be dismissed, and the Declaratory Judgment Act does not waive sovereign immunity on its own). Defendants therefore argue that, at best, Plaintiff's argument against declaratory relief would apply only to the 6 bonds for which Defendants assert a Little Tucker Act claim. However, since the question raised is a jurisdictional one, the government has not waived its argument. *See Price v. United States Gen. Serv. Admin.*, 894 F.2d 323, 324 n. 2 (9th Cir. 1990) (considering jurisdiction under Little Tucker Act on appeal even though it was not raised in the court below).

1  Circuit] has exclusive jurisdiction to hear appeals and decide all issues raised in cases in which the
2  district court's subject matter jurisdiction is 'based, in whole or *in part*,' on the Tucker Act, 28
3  U.S.C. § 1346(a)(2) (1994)." *Rothe Development Corp. v. U.S. Dept. of Defense*, 262 F.3d 1306,
4  1316 (Fed. Cir. 2001) (emphasis in original).

5        Thus, contrary to the government's argument, Judge Patel's prior holding in this case that
6  immigration bonds are contracts does not mandate a finding that Defendant's claim for declaratory
7  relief arises solely in contract and that therefore equitable relief is unavailable. Courts have used the
8  distinction explained above in *Sharp* and *Transohio* to preclude any actions arising directly out of
9  the contract, but to permit actions arising from statutory or constitutional rights that happen to
10 involve contracts. *See Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598,
11 609 (holding that court could exercise jurisdiction over statutory and due process claims related to a
12 contract, but not common law contract claims); *Sharp*, 798 F.2d at 1523-24 (rejecting "[t]hat part of
13 appellant's complaint and prayer seeking a declaration that he had a valid contract with appellees
14 and an injunction requiring appellees to perform that contract" as impliedly forbidden by the Little
15 Tucker Act, but permitting claim that "transfer would be contrary to regulations, statutes and the
16 Constitution"); *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985) (holding that
17 the Tucker Act impliedly forbade claim under common law contract principles such as
18 impracticability, but did not forbid claim that enforcement of the contract would violate certain
19 statutory provisions), *cert. denied*, 474 U.S. 931 (1985); *North Star Alaska v. United States*, 9 F.3d
20 1430, 1432 (9th Cir. 1993) (en banc) ("[T]he Little Tucker Act does not specifically authorize the
21 district court to grant declaratory or equitable relief against the United States in contract cases.
22 However, the district court does have jurisdiction to hear claims for equitable relief which rest [] at
23 bottom on statutory rights.") (internal citations and quotation marks omitted); *Katz v. Cisneros*, 16
24 F.3d 1204, 1208-09 (Fed. Cir. 1994) (finding that a suit "to compel HUD to perform the calculation
25 of contract rents in accordance with 24 C.F.R. § 882.408 and other applicable regulations" was "not
26 a contract case" impliedly forbidden by the Tucker Act; reasoning that "Hollywood Associates does
27 not seek declaratory relief in the performance of a contract, but seeks judicial interpretation of a
28

federal regulation"); *see also* Order, Docket No. 48, at 17 (characterizing "the true nature of the action" as "a challenge to a final agency decision").

In the instant case, although Defendants' claims involve a contract with the government, they do not arise solely from a contract. Indeed, with the exception of the 6 bonds for which Defendants seek money damages (discussed below), Defendants do not assert a common law breach of contract claim with respect to the remaining bonds. Instead, as the previous section indicates, Defendants raise an APA claim under federal law, namely 8 C.F.R. § 103.6. Thus, even if a declaratory judgment would involve considering portions of the contract for purposes of interpreting the agency's compliance with federal law, the authorities cited above establish that such an inquiry is not prohibited. Indeed, other federal courts have considered almost identical claims. *See, e.g., Safety Nat'l Cas. Corp. v. United States Dep't of Homeland Sec.*, 711 F. Supp. 2d 697, 704 (S.D. Tex. 2008) ("The Court agrees with [the government] that it has jurisdiction to consider Plaintiffs' request for a declaratory judgment regarding [the government's] decision to breach these bonds under 28 U.S.C. § 1331 and pursuant to the Administrative Procedures Act."), *reversed in part on other grounds by AAA Bonding Agency, Inc. v. United States Dep't of Homeland Sec.*, 2011 U.S. App. LEXIS 22154 (5th Cir. Tex. Oct. 31, 2011); *Castaneda v. U.S. Dept. of Justice*, 828 F.2d 501, 501 (8th Cir. 1987) (considering a "declaratory judgment action that sought to invalidate the INS's order that the terms of an appearance bond had been breached").

The government's argument, taken to its logical conclusion, would prohibit judicial review of any of its bond breach determinations where monetary relief was not available under the Little Tucker Act. If this case is truly a pure contract case (and nothing else), then APA jurisdiction would be wholly improper as Defendants would have to obtain any relief under the Little Tucker Act or not at all. *See Sharp*, 798 F.2d at 1524 ("We therefore hold that the District Court lacked jurisdiction – under the Little Tucker Act or otherwise – over appellant's claim for a declaration that appellees would violate their contractual obligations if they transferred him and for an injunction preventing the transfer on that ground."). Yet the government does not make that argument, and such a finding would contradict both Judge Patel's prior order and the numerous cases evaluating bond-breach determinations under the APA. *See* Order, Docket No. 48, at 21 ("If the Little Tucker Act claim is

eventually found to be improper, defendants may seek relief on their APA claim."); *Bahramizadeh v. INS*, 717 F.2d 1170, 1173 (7th Cir. 1983) (reviewing bond-breach determinations and agency's interpretation of § 103.6 under the APA framework); *Castaneda v. Dep't of Justice*, 828 F.2d 501, 502 (8th Cir. 1987) (reviewing immigration bond-breach determination under APA framework); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 501 (7th Cir. 1995) ("[W]e must determine whether the INS's decision that the bond conditions were substantially violated was plainly erroneous or inconsistent with 8 C.F.R. § 103.6(e)."); *Ahmed v. United States*, 480 F.2d 531, 543 (2d Cir. 1973) (analyzing whether a bond "was violated in a substantial way" under § 103.6).

With respect to the 6 bonds for which Defendants assert Little Tucker Act claims, Plaintiff is correct that the Court may not generally grant declaratory relief. *See Suburban Mortgage Assocs., Inc. v. U.S. Dep't of Housing & Urban Dev.*, 480 F.3d 1116, 1126 (Fed. Cir. 2007) (stating that "[t]he availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an 'adequate remedy' for [APA] § 704 purposes," thereby precluding an action for equitable relief under the APA) (internal citations and quotations omitted); *See also* Order, Docket No. 48, at 21 ("Since a remedy under the Little Tucker Act is available, the concurrent APA claim is improper."). Nonetheless, when exercising jurisdiction under the Little Tucker Act, the Court may still grant equitable relief that is incidental to the monetary relief it orders. *Bobula v. U.S. Dept. of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages.") (citing 28 U.S.C. § 1491(a)(2)); *Legal Aid Soc. of New York v. U.S.*, 92 Fed. Cl. 285, 301 (2010) ("Under section 1491(a)(2) of the Tucker Act, the Court of Federal Claims is authorized 'to provide an entire remedy and to complete the relief afforded by [a] judgment'" as long as such relief is "tied and subordinate to a money judgment.") (quoting 28 U.S.C. § 1491(a)(2)).[2]

---

[2] Since the district court's jurisdiction is concurrent with that of the Court of Federal Claims, cases discussing that court's jurisdiction are applicable here. *Richardson*, 409 U.S. at 466 ("The Tucker Act did no more than authorize the District Court to sit as a court of claims and . . . the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims.").

11

1    The government seems to argue that incidental declaratory–as opposed to injunctive–relief is not permitted. Reply at 5-6 (citing, *e.g.*, *Wilkins v. United States*, 279 F.3d 782, 786 (9th Cir. 2002) ("Thus the court may grant injunctive relief when it is associated with and subordinate to a monetary claim, but it has no jurisdiction over claims where the monetary claim is incidental to a claim for affirmative non-monetary relief") (internal citations and quotation marks omitted)).  However, while *Wilkins* may have focused on injunctive relief, the Court of Claims has explained that a court may declare the parties' respective rights when such a conclusion of law is incidental to the monetary relief sought under the Tucker Act. *Pauley Petroleum Inc. v. U. S.*, 591 F.2d 1308, 1314-15 (Ct. Cl. 1979).  Thus, while Defendants cannot obtain a separate declaratory judgment in which the court would "state the legal rights of the parties without regard to a monetary remedy or the grant of specific relief," the court may still "make a ruling of law . . . in order to arrive at a money judgment" on Defendants' Little Tucker Act claims. *Id.* at 1315; *Stephanatos v. U.S.*, 81 Fed. Cl. 440, 445 (Fed. Cl. 2008) ("This Court does possess the authority to grant declaratory relief . . . in cases where the declaratory relief requested is 'an incident of and collateral to' a money judgment.") (quoting *James v. Caldera*, 159 F.3d 573, 580–81 (Fed. Cir.1998)).  In this case, the declaratory relief sought by Defendants is a declaration of "the rights and duties of the parties," FACC ¶ 78, which would be incidental to any determination that Defendants are entitled to payment from the government under the 6 bonds at issue.[3]  Such relief is not barred by the monetary claims herein.

Accordingly, the motion to dismiss Defendants' declaratory relief claim is **DENIED**.

///
///
///
///
///
///
///

---

[3] To the extent Defendants seek broader declaratory relief with respect to these 6 bonds than that necessary to reach a decision regarding their claims for monetary relief, such a declaratory judgment would be unavailable.

### III. CONCLUSION

For the foregoing reasons, Defendants' FACC is dismissed with leave to amend with respect to Defendants' factual allegations regarding each bond breach determination, and dismissed with leave to amend with respect to Defendants' APA claim. Plaintiff's motion to dismiss the FACC is **DENIED** with respect to Defendants' declaratory relief claim. Defendants shall file their amended counterclaim consistent with this order within 20 days of the date of this order. Said pleading shall not add additional bonds.

This order disposes of Docket No. 100.

IT IS SO ORDERED.

Dated: February 1, 2012

_____
EDWARD M. CHEN
United States District Judge