UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GONZALES & GONZALES BONDS AND INSURANCE AGENCY, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-09-4029 EMC<br><br>**ORDER REMANDING ACTION TO THE DEPARTMENT OF HOMELAND SECURITY**<br><br>**(Docket Nos. 127, 129)** |

    Pending before the Court are the parties' cross-motions regarding the contents of the proposed administrative record. Docket Nos. 127, 129. Having considered the parties' submissions and oral argument, the Court determines that remand is necessary for the agency to make a determination as to the disputed bond breach determinations in the first instance and develop an administrative record. The Court therefore **REMANDS** this action to the Department of Homeland Security.

**I.    BACKGROUND**

    This action arises from the government's ("DHS's") claims pursuant to 8 C.F.R. § 103.6(e) for enforcement of final administrative determinations that Defendants Gonzales & Gonzales/American Surety Company ("G&G") breached immigration bonds by failing to deliver bonded aliens, and G&G's counterclaims arising from those determinations. *See* DHS Counterclaim, Docket No. 118, ¶ 1. Pursuant to § 103.6(e),

> A bond is breached when there has been a substantial violation of the stipulated conditions. A final determination that a bond has been breached creates a claim in favor of the United States which may not be released or discharged by a Service officer. The district director having custody of the file containing the immigration bond executed on Form I–352 shall determine whether the bond shall be declared breached or cancelled, and shall notify the obligor on Form I–323 or Form I–391 of the decision, and, if declared breached, of the reasons therefor, and of the right to appeal in accordance with the provisions of this part.

8 C.F.R. § 103.6(e). As Judge Patel explained in a prior order in this matter,

> The district director who determines that a bond has been breached must first notify the obligor of the decision, the reasons for the decision, and the right to appeal. 8 C.F.R. § 103.6(e). The obligor then has thirty days to appeal the decision to the AAO. *Id.* § 103.3(a)(2)(i). The obligor may also submit a brief with his appeal, including any evidence that he wishes the agency to consider. *Id.* § 103.3(a)(2)(i), (vi); *see* Docket No. 37 (Rhew Dec.) ¶ 4. The appeal and the briefs become part of the record. 8 C.F.R. § 103.3(a)(1)(iii)(C). The appeal is first reviewed by the official who made the unfavorable decision; if that official still finds the bond to have been breached, then he must forward the appeal and the related administrative record to the AAO. *Id.* § 103.3(a)(2)(ii)-(iv). The party appealing can also request oral argument, which the AAO may grant in its discretion. *Id.* § 103.3(b).

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1083 (N.D. Cal. 2010). In this case, G&G did not file an administrative appeal and seek to supplement the record. However, unlike many administrative review processes, administrative exhaustion is not required for bond breach determinations before bringing suit in federal court. *See AAA Bonding Agency Inc. v. U.S. Dept. of Homeland Sec.*, 447 F. App'x 603, 612 (5th Cir. 2011) ("Administrative review of a breach determination is optional but not required by the governing regulations) (citing 8 C.F.R. § 103.6(e); *McLean v. Slattery*, 839 F. Supp. 188, 190 (E.D.N.Y. 1993) (finding that exhaustion of administrative remedies is not mandated for appeal under the APA of determinations that a bond has been breached)).

  Importantly, in this case, Judge Patel after a comprehensive analysis accepted the government's argument and found that the agency's bond breach determination are subject to the "arbitrary and capricious" standard of review. 728 F. Supp. 2d at 1089-1092. As Judge Patel noted,

"every court to address immigration bonds has employed the arbitrary and capricious standard of review." *Id.* at 1089.

Given the large number of bonds in dispute between the parties, this Court directed the parties to identify 24 bellwether bonds for the Court to adjudicate on cross-motions for summary judgment. On April 27, 2012, the Court ordered the parties to meet and confer regarding their identified bellwether bonds and the corresponding administrative record. The Court entered the following minute entry summarizing its order:

> - Parties shall meet and confer re: administrative record and submit a joint letter to this Court if there are remaining disputes. Defendant is to identify 12 bellwether bonds within two weeks. Plaintiff shall thereafter provide the administrative records on those bonds to Defendant. Parties to meet and confer re: briefing procedure on MSJ's (*e.g.*, issue by issue structure). Parties shall proceed according to the following schedule:
>
> | | |
> |---|---|
> | May 11, 2012: | G&G/ASC will identify its 12 bellwether bonds and the defenses that G&G/ASC asserts with respect to each of the 24 identified bond breach determinations that will be presented to the Court. |
> | May 25, 2012: | DHS will provide G&G/ASC with the record of proceedings (ROP) for the 24 bellwether bonds. The Court declines to require declarations from the officers who made the bond breach determinations at this time, without prejudice to G&G's ability to demonstrate the relevance and necessity of such declarations at a later date. |
> | June 8, 2012 | G&G/ASC will identify the documents with which it wishes to supplement the Administrative Record for any or all of the 24 bond breach determinations. |
> | June 15, 2012 | DHS will identify any further documents with which it wishes to further supplement the Administrative Record, and the parties will exchange any documents that they wish to further supplement documents previously exchanged. |
> | June 22, 2012 | Parties to meet and confer. The parties will attempt to resolve any issues relating to the contents of the proposed supplemented Administrative Records. If the parties cannot resolve their disputes, the parties will notify the Court that motions and/or objections and a hearing are required. If the parties have no |

3

|   |   |   |
|---|---|---|
| | | disputes for the Court to resolve re: administrative record, parties shall file a joint letter so informing the Court, and the Court will schedule a telephonic CMC to discuss summary judgment briefing schedule. |
| | July 6, 2012 | Opening briefs regarding disputes about supplementing the Administrative Record, if necessary. |
| | July 13, 2012 | Opposition briefs, if necessary. |
| | July 20, 2012 | Reply briefs, if necessary. |
| | July 27, 2012 | Hearing, if necessary. |

Docket No. 120. On June 22, the parties informed the Court that they were unable to resolve their disputes with respect to the administrative record, and filed the pending motions.

## II. DISCUSSION

A. The Parties' Dispute

The parties' central dispute in their motions is over the contents of the administrative record for the parties' cross-motions for summary judgment on 24 bellwether bonds. G&G argues that DHS's record of proceedings ("ROP"), which is defined by the agency's field manual, is merely a post hoc record created for this litigation, and is not the record contemplated by the Administrative Procedure Act. G&G wants to supplement the administrative record with additional government documents relevant to the bonds at issue here and the government's obligations with respect to those bonds. Specifically, G&G seeks to add the following categories of documents to the administrative record:

(1) Documents from the A-files that DHS did not include in its ROP's;

(2) DHS documents that DHS claims are not in the A-files, but that are nonetheless relevant to specific bond breach determinations (*e.g.*, administrative agency decisions and a letter from DHS to G&G addressing specific bonds);

(3) G&G/ASC documents that DHS claims are not in the A-files, but that are nonetheless relevant to specific bond breach determinations (*e.g.*, "letters from G&G/ASC to DHS addressing specific immigration bonds, and post-marked envelopes addressed to G&G/ASC from DHS," *see* Mot. at 2); and

4

(4) DHS documents addressing its policies, procedures, and administrative agency decisions regarding immigration bonds (*e.g.*, the Amwest Settlement Agreements, which "set forth the policies and procedures that DHS agreed to abide by with respect to immigration bonds," "portions of DHS's Detention and Deportation Officer's field manual discussing 'procedures for breaching bonds,' DHS memoranda discussing compliance with the Amwest Agreements and various immigration bond policies and procedures, and administrative agency decisions which support the defenses raised by G&G/ASC as to the specific bonds disputed in this action," *see* Mot. at 2).

DHS, in contrast, argues that the only documents that may be added to the administrative record beyond the ROP are documents from the A-files of the individual aliens at issue for the 24 bellwether bonds. Thus, category one, above, is not in dispute. The remaining categories, however, are disputed. G&G contends that the above categories of documents "either were or should have been reviewed by the DHS officer that made the bond breach determination." Mot. at 3. DHS disagrees.

B.  Legal Standard

As Judge Patel has already explained in this case,

> Expanding the record is "typically unnecessary to judicial review of agency decisionmaking." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.*
>
> . . . . In order to expand the record, defendants must demonstrate that "the agency has relied on documents not included in the record. This has been acknowledged as a qualification to or explication of the rule that judicial review is based upon the full administrative record in existence at the time of the agency decision . . . ." *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir.1982) (citations omitted); *see also Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir.1988) ("The district court may also inquire outside of the administrative record when it appears the agency has relied on documents or materials not included in the record." (internal quotations and citation omitted)). Indeed, the whole administrative record "is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record. The 'whole' administrative record, therefore, consists of all documents

> and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir.1989) (quotations and citation omitted).

*Gonzales & Gonzales*, 728 F. Supp. 2d at 1094; *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir.1996) ("Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court.").

As the Ninth Circuit has explained, there are only narrow exceptions to the general rule against augmenting the record:

> In limited circumstances, district courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Southwest Ctr.*, 100 F.3d at 1450 (internal citation and quotation marks omitted). These limited exceptions operate to identify and plug holes in the administrative record. Though widely accepted, these exceptions are narrowly construed and applied. *See, e.g.*, *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973) (holding that a reviewing court may require supplementation of the administrative record if it is incomplete); *USA Group Loan Servs., Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir.1996) (holding that a "court is supposed to make its decision on the basis of the administrative record," but that "[t]here are exceptions") (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir.1988), *amended by* 867 F.2d 1244 (1989)).
>
> The scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule. Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making.

*Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005); *see also Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (enunciating same standard).

Judge Patel's prior order on this issue, Docket No. 48, indicated that the Court would entertain motions to augment the administrative record. Specifically, it stated as follows:

> Defendants [G&G] claim that the government's administrative record was prepared in an arbitrary fashion because it failed to identify all documents upon which the agency relied when it declared the bond

6

**United States District Court**
For the Northern District of California

breached. In order to expand the record, defendants must demonstrate that "the agency has relied on documents not included in the record. This has been acknowledged as a qualification to or explication of the rule that judicial review is based upon the full administrative record in existence at the time of the agency decision. Some courts have thus permitted discovery when those challenging agency action have contended the record was incomplete, in order to provide a record of all documents and materials directly or indirectly considered by the agency decisionmakers." *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982) (citations omitted); *see also Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) ("The district court may also inquire outside of the administrative record when it appears the agency has relied on documents or materials not included in the record." (internal quotations and citation omitted)). Indeed, the whole administrative record "is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record. The 'whole' administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir.1989) (quotations and citation omitted). According to the DHS, "[u]pon receipt of an appeal in a case over which the AAO [sic], the district or center must review the complete case to determine [the appeal]." Adjudicator's Field Manual Excerpt at 1 (emphasis added). The DHS manual allows the district or center to "forward either the complete A-file or a complete Record of Proceeding to the AAO." *Id.* Thus, the agency appears to consider the alien's entire A-file upon appeal, even if it eventually forwards only the record of proceedings to the AAO. Moreover, the documents contained within the record of proceedings are a subset of the documents contained with the alien's A-file. *Id.* at 2; Rhew Dec., ¶ 3 ("the record that ICE provides to the AAO generally comprises a standardized subset of documents from the A-file relevant to the bond breach determination."). Consequently, the creation of the record of proceedings itself would require some review of the A-file itself.

> . . . The record of proceeding created by the government, which it states is also the administrative record, comprises a select subset of documents from the alien's A-file. Rhew Dec. ¶¶ 3-15; *id.*, Exh. A (Adjudicator's Field Manual Excerpt) at 1-2. Among the documents that are included in the record of proceedings are the bond agreement itself, the notice to the obligor to deliver the alien, and the notice stating that the bond has been breached and the basis for that conclusion. *See* Rhew Dec. ¶ 9, 11-12; Adjudicator's Field Manual Excerpt at 2. In contrast, the A-file may contain, *inter alia*, a voluntary departure bond, letter to the immigration court establishing self-deportation, notice regarding custody of the alien, and documents regarding lawful reentry. *See* Docket No. 31-1 (Atler Dec.) ¶ 6. These other documents in the A-file, even if they exist, are generally not made part of the record of proceedings. *See* Rhew Dec., ¶¶ 8-12 (discussing in detail documents that constitute the record of proceedings). Although Rhew claims that "[t]he facts necessary for the ICE official or the AAO to evaluate challenges to administrative bond breach determinations are present in the documents that comprise the Record of Proceeding," *id.* ¶ 16, he nowhere mentions

> these documents identified by the defendants, whose mere existence could render the bond-breach determination arbitrary and capricious.
>
> Since the agency appears to have reviewed the A-file during its compilation of the record of proceedings, and because the A-file may reveal documents whose admission may be necessary to determine whether the agency has considered all relevant factors and has explained its decision, the government is ordered to produce the A-files pertaining to the immigrants at issue, subject of course to the relevant privileges. The parties are ordered to meet and confer regarding an appropriate protective order. Upon completion of this production, defendants may file a motion seeking to expand the administrative record based on the standard stated above.

*Gonzales & Gonzales*, 728 F. Supp. 2d at 1094-96.

C.  Application

In the instant case, the parties' dispute over the contents of the administrative record for purposes of adjudicating their bellwether bonds highlights two central, intractable problems in this case that have been brewing since its infancy: there is no administrative determination for this Court to review under the arbitrary and capricious standard, nor is there any agreed upon record for the Court to use as a basis for evaluating the agency's determination. Thus, the Court concludes that it "simply cannot evaluate the challenged agency action on the basis of the record before it," and therefore that "the proper course . . . is to remand to the agency for additional investigation or explanation." *Florida Power & Light*, 470 U.S. at 744.

As both parties have acknowledged, the general rule is that "judicial review is based upon the full administrative record in existence at the time of the agency decision . . . ." *Public Power Council*, 674 F.2d at 794 (citations omitted). However, in this case, such a record is illusory at best. Although DHS points to the ROP or, at most, the A-File, as the appropriate source(s) for the administrative record, the ROP is not assembled unless and until the bond breach determination is appealed. *See* DHS Opp., Docket No. 131, at 4 (conceding that the ROP "compilation process does not occur until the administrative decision is appealed to the AAO"). If the surety declines to appeal, as in this case, then DHS does not assemble the ROP until litigation begins. Thus, it is not clear what documents in the ROP or A-File the agency did in fact rely upon in making its breach determinations. *See generally Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency

action."). Nor is it clear in this case whether "the agency has relied on documents or materials not included in the record," such that the Court could examine documents outside the record. *Animal Defense Council*, 840 F.2d at 1436 (internal quotations and citation omitted); *see also Southwest Ctr. for Biological Diversity*, 100 F.3d at 1450 ("Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court."). Thus, the Court simply does not know where to begin in terms of compiling a record in compliance with controlling case law. "Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making." *Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005). Yet such an outcome is difficult to avoid in this case in its current posture. To require this Court to construct a record from scratch and then determine whether the agency's decision – which may or may not have been based on the same record – was justified, would amount to de novo review in arbitrary and capricious clothing.

There is another, more fundamental problem, as previewed above. Even if there was an ascertainable record, there is no decision to review that would take into account the contents of that record. "[A] simple but fundamental rule of administrative law is that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *Burlington Truck Lines*, 371 U.S. at 168-69 (citing *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1995)). Yet as a District Court in the District of New Jersey recently acknowledged in a similar case to this one, "[h]ere, DHS did not require the bond sureties to state their defenses prior to making its administrative determination, and thus the administrative record and findings did not consider [G&G's] breach defenses, nor did it reject those defenses, nor did it accept those defenses, nor did it explain why those defenses are valid or not. These are necessary findings to be made before this Court can apply the arbitrary and capricious standard of review sought by DHS." *See United States of America v. Int'l Fidelity Ins. Co., et al.* ("*Int'l Fidelity*"), No. 11-396, Docket No. 86, at 8 (D.N.J. July 30, 2012). As the court explained further,

9

> [I]n this case and others federal district courts are being asked to try cases to determine if there has been a bond breach on hundreds of small individual bonds, with no contested administrative record below. Because the DHS regulations do not require the bond agent or surety to state their defenses before a breach determination is made, these cases are coming to federal court as ex parte breach determinations by DHS, made without any findings by DHS administrative tribunals about the legitimacy of various defenses to these bond breach determinations. In other words, the defenses to the administrative determinations are being set forth for the first time in these federal court cases. This Court has no idea what DHS considers a valid defense to its finding of breach out of the multitude of defenses being lodged individually as to each of the seventy-three small bonds.

*Int'l Fidelity* at 2-3. In other words, "[r]egardless of the standard of review utilized and the scope of the administrative record, the parties seek to have the Court review the propriety of DHS's bond breach determinations in light of the various defenses offered by the Defendants that were never considered in the administrative process." *Int'l Fidelity* at 4. This is particularly true in the instant case where Defendants have alleged a variety of affirmative defenses with respect to all 24 bellwether bonds.

Although this Court has already determined the arbitrary and capricious standard of review applies, *see Gonzales & Gonzales*, 728 F. Supp. 2d at 1089-92, in this case the Court concludes as the court did in *Int'l Fidelity* that

> such review is premature in this case, as there is no reasoned administrative decision for this Court to review. The decisions made at the administrative level were decided in the absence of the Bond Obligors' breach defenses. That is because, as discussed above, Defendants were not required by the regulations to administratively appeal the breach determinations, which appears to be when such defenses would be raised in the regulatory scheme of DHS. Without DHS having considered and ruled on Defendants' defenses to the breach determinations, this Court does not have any findings to review under the arbitrary and capricious standard urged by DHS as the correct standard. Instead, it is essentially being asked to make the administrative finding as to the validity of a whole host of defenses never adjudicated by DHS in its seventy-three individual cases. Without the ability to review reasoned, written decisions by the agency evaluating the bona fides of the many defenses lodged, the Court is asked to wear two hats: both administrative adjudicator and reviewing court.

*Int'l Fidelity* at 5-6.

As in *Int'l Fidelity*, the defenses to the bond breach claims were never presented to or adjudicated by the district director. There is no reasoned decision on the many issues now presented

to this Court. *Cf.* 8 C.F.R. § 103.6(e) (requiring statement of reasons for district director's declaration of breach). Like *Int'l Fidelity*,

> DHS did not require the bond sureties to state their defenses prior to making its administrative determination, and thus the administrative record and findings did not consider the Bond Obligors' breach defenses, nor did it reject those defenses, nor did it accept those defenses, nor did it explain why those defenses are valid or not. These are necessary findings to be made before this Court can apply the arbitrary and capricious stands of review sought by DHS.

*Int'l Fidelity* at 8.

Accordingly, "[f]or the courts to substitute their or counsel's discretion for that of the Commission is incompatible with the orderly functioning of the process of judicial review." *Burlington Truck Lines*, 371 U.S. at 169 (internal citations and quotation marks omitted). Likewise, for this Court to proceed to examine each breach determination and make findings based on evidence presented by both parties – not presented to the agency – would be "incongruous with the purposes of APA review." *Int'l Fidelity* at 7.

The Court also notes that it has endeavored to craft a manageable adjudication plan to address the challenges of this case. For example, it required the parties to identify 24 bellwether bonds that represented their most common claims and defenses, in the hopes that adjudicating these bonds would aid the parties' subsequent settlement efforts. It has taken substantial time and resources to simply arrive at a list of bellwether bonds. Now, the parties' dispute over the administrative record highlights the morass the Court would face if it attempted (improperly) to adjudicate each bond anew, without an appropriate record from the agency. In addition, the Court's efforts at preserving judicial economy appear doomed to fail; a similar case in the Southern District of Texas, concerning over 1,400 bonds and employing a similar bellwether approach, has been pending since 2005 with no end in sight. *See Safety Nat. Cas. Corp. v. U.S. Dept. of Homeland Sec.*, 05-CV-2159, 2012 WL 974955, at *8 (S.D. Tex. Mar. 21, 2012) (latest order from Judge Ellison, entering final judgment as to several bonds and discussing discovery plans for the bonds not included in the initial fifty bellwether bonds the court had already addressed).

///

///

D.   Remand

Accordingly, as to all bonds before this Court (not just the 24 bellwether bonds), the Court determines that remand is proper in order to permit the agency to consider G&G's defenses in the first instance and reach a reasoned decision for this Court to review under the appropriate standard. Such a remand "is not to deprecate, but to vindicate the administrative process, for the purpose of the rule is to avoid propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency." *Burlington Truck Lines*, 371 U.S. at 169 (internal citations and quotation marks omitted).[1]

On remand, G&G is directed to supplement the record before DHS with its defenses to each determination and an explanation of why those defenses should bar collection of the bonds. G&G is directed to state and bring such defenses within 60 days of remand. DHS shall consider each defense for each bond and provide a decision for each bond breach determination, with an explanation of its reasons for accepting or rejecting each defense as to each bond found to be breached. Such reasoned decisions will permit this Court to correctly apply an arbitrary and capricious standard of review in keeping with 8 C.F.R. § 103.6(e).

DHS is instructed to evaluate these positions in a fair and neutral manner, upon the entirety of the administrative record before it. DHS shall then issue a reasoned decision and certify the administrative record, stating which parts of the record it believes deserves weight, and the reasons why. The parties shall file a status conference statement every 90 days from the date of this Order, informing the Court of the status of the administrative proceedings.

### III.   CONCLUSION

For the foregoing reasons, this matter is **REMANDED** to DHS for further proceedings consistent with this order. The Court hereby **ORDERS** as follows:

(1)   On remand, for each bond that is the subject of this suit, G&G shall supplement and assert each affirmative defense as directed above, DHS shall consider all of G&G's defenses and

---

[1] The predicament in which this Court finds itself is the result of DHS's regulatory scheme which does not require exhaustion of appeal rights to the AAO and a compilation of the record and the disincentives to bond obligors to opt for the voluntary agency appeal process as described in *Int'l Fidelity* at 9.

shall create a written decision explaining the consideration of those defenses and the basis for determining the bond to be breached.

(2) Once DHS reconsiders each bond breach determination in light of the Bond Obligors' defenses, the parties may present to this Court for review those bonds which DHS continues to declare to be breached along with the written decisions explaining the bases thereof. The parties shall then jointly propose a process which permits this Court to conduct APA review of the remaining bond breach determinations by ruling upon 24 bellwether breach determinations or common issues (each party to select 12). The parties shall stipulate that such rulings will bind and resolve all outstanding bond breach determinations as between them.

(3) This case is **ADMINISTRATIVELY TERMINATED** and the parties may seek re-opening once DHS has complied with the terms of this Order on remand.

This Order disposes of Docket Nos. 127 and 129.

IT IS SO ORDERED.

Dated: September 25, 2012

_____
EDWARD M. CHEN
United States District Judge